## A09A1995. GRAY v. THE STATE.
(692 SE2d 716)

BARNES, Judge.

John Gray appeals the trial court's denial of his motion to dismiss the indictment against him, contending that the delay of more than seven years between his arrest and motion violated his state and federal rights to a speedy trial. While the delay was very lengthy, the case was dead-docketed for five years because the State could not locate the victim, and Gray was incarcerated on these charges for at most eleven months. A review of the record reveals that the trial court did not abuse its discretion in denying the motion, and thus we affirm.

In considering a defendant's motion to dismiss on speedy trial grounds, the court must look at factors such as the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972); *State v. Redding*, 274 Ga. 831, 832 (561 SE2d 79) (2002). No one factor is necessary or sufficient to find a deprivation of the right of speedy trial. Id. Instead, the factors must be considered together, balancing the conduct of the prosecution and the defendant on a case-by-case basis. *Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994). We review the trial court's denial of a motion to dismiss on speedy trial grounds for abuse of discretion only. *Ruffin v. State*, 284 Ga. 52, 65 (3) (663 SE2d 189) (2008); *Frazier v. State*, 277 Ga. App. 881, 883 (627 SE2d 894) (2006).

On September 23, 2000, police officers responding to a 911 report of a woman screaming found Gray allegedly engaging in sexual intercourse with the nude, beaten victim while two other men held her down. The record includes the victim's certified medical record and photographs showing her left eye swollen shut and numerous abrasions and contusions on her face and body. She was transported to Grady Hospital, and the officers arrested Gray and the two men, Azmund Stevenson and William Lewis, charging them with rape. Gray was bound over to superior court two days later and

counsel was appointed to defend him. At a bond hearing on October 23, 2000, the trial court gave the State until November 20, 2000, to indict Gray. An investigator for the State reported on October 26, 2000 that the victim, who was homeless, had not contacted him. The trial court then gave the State until December 27, 2000 to indict Gray, but as of December 27, 2000, the State could not locate the victim and Gray was granted a $5,000 bond.

Gray, Stevenson, and Lewis were indicted on May 25, 2001, for rape, aggravated sodomy, aggravated assault, and false imprisonment. On July 15, 2001, Gray failed to appear and the trial court issued a bench warrant. In September 2001, the State obtained a material witness warrant for the victim, who was incarcerated in South Carolina. In October 2001, Gray was arrested for simple battery and served with the bench warrant, and although the battery charge was dismissed two days later, Gray remained incarcerated under the warrant. At a hearing in April 2002, he explained that he did not appear for the July 2001 court hearing because he had been incarcerated on an unrelated matter, and the trial court withdrew the warrant and released Gray on a $5,000 bond.

In October 2002, the State dead-docketed the charges of rape, aggravated sodomy, and false imprisonment against Gray's co-defendant Lewis, who pled guilty to aggravated assault and was sentenced to ten years, to serve five in prison. In November 2002, the State dead-docketed the same charges for Stevenson, who entered an *Alford* plea to aggravated assault. The State explained that, according to the victim, Stevenson was the least culpable of the three men and she was unwilling to return to Georgia for his trial. He was sentenced to five years commuted to time served plus probation and granted first offender status.

In February 2003, Gray failed to appear for a scheduled court date, so his case was placed on the administrative dead docket and a bench warrant was issued for his arrest. He was arrested on April 9, 2003. The case was set for trial in May 2003, but although the State had interviewed the victim a few months before when she was incarcerated in South Carolina for a misdemeanor and had contact information for her, she could no longer be located. The State decided it would be difficult to obtain a rape conviction without the victim and thus dead-docketed the case.

Nothing else happened regarding the September 2000 incident until September 2006, when Gray was arrested and indicted for another crime: aggravated assault with intent to commit rape. While investigating that case, the State reviewed the dead-docketed charges against Gray and its fugitive unit located the victim in 2007, incarcerated in South Carolina. On January 15, 2008, it reindicted Gray for the September 2000 incident, and Gray moved on February

9, 2008 to dismiss the reindictment for violation of his constitutional right to a speedy trial. On February 18, 2008, he was tried for the 2006 incident, during which the victim in the 2000 incident gave similar transaction testimony. He was convicted of aggravated assault with intent to rape for the 2006 offense and sentenced to serve 20 years.

Four days later, on February 22, 2008, the trial court held a hearing on Gray's motion to dismiss the reindictment, during which the original prosecutor testified about the circumstances surrounding the dead-docketing of the first indictment on the 2000 charges. The court determined that the parties needed to investigate more thoroughly to determine what happened in the interim between the dead-docketing in May 2003 and the reindictment in January 2008, and continued the hearing.

On April 21, 2008, Gray filed a statutory speedy trial demand pursuant to OCGA § 17-7-171. On August 28, 2008, a new prosecutor represented the State and was unaware that the hearing was a continuation of the first hearing. No transcript of the February 22, 2008 hearing was available, and the State did not have its investigator or other witnesses present. The court determined that all the witnesses who testified before and would testify in the future should be called during one hearing, and reviewed with the parties who those witnesses were, including the two co-defendants. At that point, Gray announced, "We are ready for trial, we are requesting trial." The State responded by asking if Gray wanted to dismiss the reindictment or proceed to trial, because it was ready for trial, and the trial court asked if Gray was withdrawing his motion. Gray responded, "Judge, my simple announcement is we are not delaying from the defense point of view."

A month later, on September 25, 2008, Gray began to argue his statutory speedy trial demand, and the State responded that it had been ready to try the 2000 case before it tried the case on the 2006 incident, but then Gray filed his constitutional speedy trial demand and the State was unable to proceed with trial until the motion was ruled on. Therefore the State tried the case regarding the 2006 incident first. Then Gray filed the statutory speedy trial demand in April 2008, with which the State was unable to comply because Gray had filed his motion to dismiss. Gray never mentioned the statutory speedy trial demand during the August hearing. And while he argued during the September hearing that he had announced ready for trial, as required by the statute, the State noted that Gray had also declined to withdraw his motion to dismiss then, thus leaving the State "gridlocked from doing anything because we're barred from going forward by the constitutional speedy [sic], but ordered to go forward by the speedy trial demand." After a conference in cham-

bers, the court came back on the record and announced the hearing was "postponed for further research."

Finally, on November 10, 2008, the trial court held a lengthy hearing on Gray's constitutional motion after ruling that he waived his statutory speedy trial right by failing to file it within the allowed time after the first indictment and failing to obtain leave of court to file it late. After Gray testified at length, the trial court considered the four *Barker* factors and denied the motion.

(a) *Length of the delay*. Unless a delay is presumptively prejudicial, the analysis goes no further. *Wimberly v. State*, 279 Ga. 65, 66 (608 SE2d 625) (2005). A delay of more than a year is presumptively prejudicial, and triggers the consideration of other factors in conjunction with the length of delay. *Ruffin*, supra, 284 Ga. at 55; *Bowling v. State*, 285 Ga. 43, 44-45 (1) (a) (673 SE2d 194) (2009). Here, the delay of eight years and two months between Gray's arrest and his motion to dismiss was uncommonly long and presumptively prejudicial, and had to be considered along with the reasons for the delay and other factors set out in *Barker*.

(b) *Reasons for the delay*. The most egregious reason for delaying the trial of a case is an intent to hamper the defense. *Mesaros v. State*, 283 Ga. App. 337, 339 (641 SE2d 559) (2007). The trial court here found, and we agree, that nothing in the record shows the State deliberately attempted to delay the trial to hamper the defense. The record shows that the State was unable to locate the victim when Gray's case came up for trial, and thus dead-docketed the case until it could do so. A missing witness may justify a delay. *Barker*, supra, 407 U. S. at 531; *Brannen v. State*, 274 Ga. 454, 455 (553 SE2d 813) (2001). Further, fourteen months of that delay can be attributed to Gray's failure to appear for several court dates. But after dead-docketing the case, the State took no further action to find the victim until the fugitive team located the victim in 2007 in anticipation of the February 2008 trial on the 2006 incident, and as the trial court found, this inaction weighs heavily against the State. *Oni v. State*, 285 Ga. App. 342, 343-344 (2) (b) (646 SE2d 312) (2007).

(c) *Assertion of the right*. "It is the defendant's responsibility to assert the right to trial, and the failure to exercise that right is entitled to strong evidentiary weight against the defendant. [Cit.]" (Punctuation omitted.) *Henderson v. State*, 290 Ga. App. 427, 430 (1) (c) (662 SE2d 652) (2008). In this case Gray did not assert his right for more than seven years from his arrest, a factor the trial court weighed heavily against him. While he argued that he did not know the case was pending, the trial court found that "clearly the defendant knew that he was indicted in 2001 when he was in custody and had a plea and arraignment." While Gray asserted he thought the case had been dismissed, he also testified that every time he was

locked up after the case was dead-docketed, he "didn't know if this charge would come up or not." This factor weighs heavily against Gray.

(d) *Prejudice*. Within the *Barker* balancing test, the issue of prejudice weighs "most heavily in determining whether a defendant's constitutional rights have been violated." (Citation and punctuation omitted.) *Frazier*, supra, 277 Ga. App. at 883 (d). In evaluating prejudice, a court must consider the three interests protected by the speedy trial right: "(i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired." (Citation and punctuation omitted.) Id. The third interest — impairment of the defense — is the most important component of the prejudice factor. Id.

(i) *Oppressive pretrial incarceration*. The State argued that Gray spent only three months in jail solely for this crime, and the trial court found that Gray was incarcerated for at most eleven months and eighteen days in connection with this case. Although he spent more time than that in jail, those confinements were due to other incidents. The trial court did not abuse its discretion in determining that the delay in this case caused no oppressive pretrial incarceration.

(ii) *Minimizing anxiety and concern*. Gray testified that the anxiety of having the case hanging over him made him worry, lose weight, and hyperventilate, for which he had been prescribed an inhaler. On cross-examination, however, he admitted that he had obtained the inhaler in 2006, well before his 2008 reindictment. Further, this testimony is contradicted by Gray's claim that he was unaware the charges were pending. Some anxiety and concern is always present to some extent, and the trial court did not abuse its discretion in finding that Gray had shown no evidence of unusual anxiety and concern.

(iii) *Impairment of defense*. Undoubtedly, the length of delay must be considered in assessing prejudice, and prejudice from a delay "intensif[ies] over time." (Citations and punctuation omitted.) *Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d 32) (2005). An extended pretrial delay, such as one that exceeds five years, raises a presumption that the reliability and fairness of the trial has been compromised "to some degree in ways . . . not subject to specific proof." (Citations and punctuation omitted.) *Kramer v. State*, 287 Ga. App. 796, 800 (1) (652 SE2d 843) (2007); see also *Williams*, supra, 279 Ga. at 110. This presumptive prejudice, however, "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." (Citation and punctuation omitted.) *Kramer*, supra, 287 Ga. App. at 800-801 (1). Further, unless all of the first three

*Barker* factors weigh heavily against the State, Gray must demonstrate actual prejudice to succeed in his motion to dismiss. *United States v. Ingram*, 446 F3d 1332, 1338 (11th Cir. 2006). "Delay does not per se prejudice the defense because it can tilt the case in favor of the defense or the prosecution, and one cannot generally be sure which of them it has prejudiced more severely." (Citation and punctuation omitted.) *State v. Giddens*, 280 Ga. App. 586, 589 (634 SE2d 526) (2006).

Here, Gray claims that the passage of time has prejudiced his defense for several reasons. In addition to the presumptive prejudice due to the length of the delay, he initially argued that he could not find his co-defendants; that the parking lot in which the incident took place no longer exists; and that he could no longer find people who had lived in the area who could have testified regarding events leading up to the incident. The State located the two co-defendants for him, though, and Gray apparently never tried to locate any potential witnesses during the time between his arrest and the dead-docketing three years later. The police officers who arrested Gray are available and thus every person who was an eyewitness to or participant in the incident for which Gray was arrested is available to testify.

The State also pointed out during the hearing on Gray's motion that he had the benefit of cross-examining the victim during the trial of the 2006 incident, when she testified as a similar transaction witness. Thus he had a preview of all the information that would come out during his trial. And certainly the passage of time is equally prejudicial to the State because of the difficulty in locating the transient victim, who may again become unavailable when this case is called for trial. Further, pictures of the parking lot and street are available, and Gray has not explained how reviewing the scene or obtaining the testimony of other people he had seen before his arrest would be relevant to the charges against him, which arose when the police caught him on top of the naked beaten victim. Gray has not shown actual prejudice.

In light of the long delay between Gray's arrest, however, his "failure to make a particularized showing of . . . his decreased ability to present a defense at trial must not be weighed heavily against him." *Williams v. State*, 277 Ga. 598, 601 (592 SE2d 848) (2004); *Giddens*, supra, 280 Ga. App. at 590.

(e) *Weighing the factors.* Although the State's negligence in searching for the victim delayed the proceedings in this case, Gray waited years to assert his right to a speedy trial, and he offered no specific evidence that the delay prejudiced him. Under these circumstances, the trial court was authorized to find that, despite its length, the delay did not violate Gray's constitutional right to a speedy trial.

See *Williams*, supra, 279 Ga. at 110; *Kramer*, supra, 287 Ga. App. at 801.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 24, 2010 — 

*Jimmonique R. S. Rodgers*, for appellant.

*Paul L. Howard, Jr., District Attorney, John O. Williams, Assistant District Attorney*, for appellee.